No. 00-091

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 222

STATE OF MONTANA

Plaintiff and Respondent,

v.

RUSSELL G. GARNER,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Kristina Guest, Appellate Defender Office,

Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jim Wheelis,

Assistant Attorney General, Helena, Montana

Brant Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: February 2, 2001
Decided: November 8, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 On November 15, 1999, Russell G. Garner filed a motion to withdraw his guilty pleas. The District Court denied his motion. Garner appeals. The following issues are dispositive:

1. Did the District Court violate Garner's due process rights by failing to hold a hearing to determine Garner's competence to stand trial?

2. Did the District Court abuse its discretion by denying Garner's motion to withdraw his guilty pleas?

3. Did Garner's motion to withdraw his guilty pleas constitute a critical stage of the proceedings?

¶2 We affirm.

## BACKGROUND

¶3 On June 16, 1995, Russell Garner and Steven Newhouse were charged with the theft of a pickup truck. Garner was also charged with forgery. The State alleged that Newhouse and Garner stole a truck from Missoula, Montana, and that Garner later presented a stolen check at the EZ Money in Great Falls, Montana. Garner and Newhouse were prosecuted separately and Garner was the sole defendant on the forgery charge. After counsel was appointed to Garner, he entered a plea of not guilty.

¶4 The trial commenced on November 29, 1995, with Larry LaFountain appearing as counsel for Garner. The State called as witnesses the owner of the check, which Garner presented to EZ Money, and employees of EZ Money who identified Garner as the man

who attempted to sign the stolen check. The owner of the pickup truck in question then testified that his truck had been missing for about ten days prior to the incident at EZ Money and that neither Garner nor Newhouse had his permission to use it.

¶5 John Sowell, a detective with the Great Falls Police Department, appeared next as a witness. He had responded to the incident at EZ Money and testified at trial that, after Garner was arrested and read his Miranda rights, Garner informed him that he had taken the truck from Missoula and picked up a friend in Bozeman several days later. During cross-examination of Sowell, LaFountain established that Newhouse was the only person seen driving the pickup and that Sowell was unable to obtain any fingerprints from the truck. LaFountain also established that Sowell's memory of his conversation with Garner was refreshed by looking at his report, which he dictated after the incident.

¶6 Following the prosecutor's redirect examination, LaFountain informed the court at a side-bar conference that Garner wished to question Sowell himself. After an objection by the prosecution, the court determined that it would take up the issue the following day. The next morning, LaFountain told the court that Garner wanted to "do part of the questioning of some of the [State's] witnesses." The State opposed the request. The court inquired if Garner wanted to represent himself. While LaFountain said that he did not, he indicated that he and Garner were in conflict over some of Garner's requests. The court told LaFountain that, unless Garner dismissed him as counsel, LaFountain had the authority to decide whether a question Garner posed was appropriate. The court ultimately denied Garner's request to examine the State's witnesses.

¶7 LaFountain then asked for a recess in order to file a motion to dismiss for lack of a speedy trial. The court denied the request. LaFountain again indicated that he and Garner were unable to cooperate. After further discussion, the court informed Garner that he needed to determine whether he wished to continue to be represented by LaFountain or whether he wished to represent himself. Garner informed the court that he wished to represent himself. After further questioning, Garner proceeded pro se and the court appointed LaFountain as standby counsel. Before the trial continued, LaFountain informed the court that he wished to question Garner on the stand about his medication. At this time, Garner clearly expressed his unhappiness with LaFountain's representation.

¶8 Following this exchange, Garner requested that the court recall those witnesses that had previously been excused. The court refused. The trial proceeded, and Garner cross-examined the remaining State witnesses. After the State rested, Garner moved to dismiss

the case for lack of evidence. The court denied the motion and after a short break, the trial proceeded. Before Garner commenced his case-in-chief, the following conversation took place:

COURT: Mr. Garner, how are you coming?

GARNER: Good.

COURT: All right. I want to make sure that before we proceed any further, that you understand exactly what it is you're doing here. You know, of course, that the sixth amendment guarantees you the right to counsel?

GARNER: Yes.

COURT: And you've had counsel appointed for you?

GARNER: Yes.

COURT: Okay. Now, I want to make sure that you're aware of the nature of the charges against you. You understand that you're charged with theft and that you're charged with forgery.

GARNER: Yes.

COURT: Do you know what the penalties are for those offenses?

GARNER: Twenty years for forgery, up to 20 years and up to 10 years, and also Mrs. Macek is seeking persistent felony offender on me, so anywhere from 5 to 100 tacked on the end of that.

COURT: OK, I mean -

MACEK: Just as a correction to that, Your Honor, because Mr. Garner has already been declared as a persistent felony offender once, he actually, if convicted, is facing an additional minimum of 19 years to 100 years and that that sentence must run consecutively to his sentence on the underlying charges.

COURT: OK. The penalty then for theft is, I think you said 10 years.

GARNER: Yes.

COURT: In the Montana State Prison to on, up to 10 years and a fine of $50,000 or both. And for forgery, the penalty is imprisonment in the state prison for a term of not more than 20 years or a fine of not more than $50,000 or both. And then the persistent felony, or persistent offender issue is tacked on to that as a consecutive.

GARNER: Excuse me, Your Honor, I'd like to know what amendment guarantees me the right to a fast and speedy trial.

COURT: I'm not sure which one it is. But it's one of the first 10 amendments.

GARNER: Yes.

COURT: And you're aware of that. And you indicated that you intend to raise that as an issue. And you're certainly entitled to do that as grounds for an appeal if you should be convicted.

As you know, the order that I issued required that pretrial provisions be required four weeks before trial and your attorney discussed -

GARNER: And I asked him to.

COURT: I understand you asked him to and he said that he did not believe that the motion was well taken. He so chose in his capacity as counsel not to file that motion, which is his obligation to make the determination.

So, and I understand that's a concern that you have and that's apparently one of the reasons that you have elected to proceed -

GARNER: I'd like to ask for a mistrial on the grounds that I have been misrepresented about by my attorney.

COURT: That's not the basis for a mistrial and I am not going to grant -

GARNER: Ineffective assistance of counsel?

COURT: That's a matter for appeal. And I don't think that you've established - nor am I going to listen to that motion at this time.

GARNER: Okay.

COURT: The other thing that I want to make sure of is that you understand the pitfalls of trying to represent yourself.

GARNER: Yes, Your Honor. What I am trying to get across is that my lawyer was so, how would I put this? Did such a poor job that I, I have no way to continue this. I'm not prepared for this.

COURT: And so what you're telling me is that you don't feel competent to go forward individually?

GARNER: Oh, I feel competent. But with the information here, with the statements, now I need more time. I'm going to have to have time to be able to go through this, to get to a legal library. I'm being held in Montana State Prison. I have it there. I would like to postpone for at least six months or have a chance to prepare for this on my own.

¶9 After further discussion about LaFountain's ineffectiveness, Garner again indicated that he wanted more time to prepare. The court was unwilling to delay the trial for such a lengthy time. The court eventually agreed to recess until the afternoon in order for Garner to prepare.

¶10 In his case in chief, Garner recalled several police officers who had been present during his arrest. Upon examination of Detective Sowell and other officers, he elicited that his confession could not be confirmed by other officers and that certain statements made by Newhouse occurred before Miranda warnings were read.

¶11 Garner finally called himself to testify. The state objected to Garner giving a narrative statement. Therefore, Garner agreed to have LaFountain question him on the stand. Garner essentially testified that Newhouse picked him up in a pickup truck at a rest stop and instigated the check scam. He also indicated that he decided not to go through with cashing the check and that he abandoned the enterprise because it was wrong. After cross and redirect examination, Garner rested.

¶12 The court then initiated a discussion about instructions to the jury. Garner requested an instruction on a lesser charge. During the discussion, Garner interjected a number of times, including to opine that "nobody's following the law." After the court eventually denied Garner's request for jury instructions, Garner stated that he wished to plead guilty to both charges. After an extensive dialogue between the court and Garner, including questioning by the State and a remark by LaFountain, the court determined that Garner voluntarily entered guilty pleas to both counts.

¶13 On January 23, 1996, during the sentencing hearing, the State introduced certified copies of two prior judgments, and the court declared Garner to be a persistent felony offender. Sentence was imposed and enhanced to include a ten-year term due to Garner's status as a persistent felony offender. On May 6, 1996, Garner, through new counsel, moved to correct the sentence on the grounds that the persistent felony offender notice was not filed prior to the omnibus hearing. The State responded, and the presiding judge informed counsel that the issue must be raised in a postconviction petition. Garner, through counsel, then filed a Motion to Correct Sentence and Petition for Postconviction Relief on September 23, 1996, raising the same issues. In March 1997, Garner's counsel filed an amended petition adding claims of ineffective assistance of counsel. A hearing was held on October 21, 1997.

¶14 On January 21, 1998, the District Court issued an order denying the petition for postconviction relief. On November 5, 1998, Garner, acting pro se, filed a notice of appeal, a motion for appointment of counsel, and a motion to take an out of time appeal with this Court. He claimed that he was not informed of his right to appeal after the lower court denied his petition for postconviction relief. On December 8, 1998, this Court ordered that the case be remanded for an evidentiary hearing. Garner was appointed counsel and an evidentiary hearing was held on April 19, 1999. Garner's motion was subsequently denied on November 30, 1999.

¶15 On November 15, 1999, Garner filed a motion with the District Court to withdraw his guilty pleas and enter a plea of not guilty asserting that he was denied medication and that he was incompetent to enter a guilty plea. The motion was denied on January 24, 2000. Garner appeals.

¶16 Garner argues that he was not competent to plead guilty and thus his guilty plea should be vacated. He argues that the District Court erred in first considering Garner's competency independent of his guilty plea. We conclude that the District Court correctly

addressed Garner's competency to stand trial and Garner's ability to make a knowing and voluntary plea of guilty as separate issues.

¶17 We will first address the issue of Garner's competency to stand trial. Next, we will address the validity of Garner's guilty plea. Finally, we will address his contentions that he did not knowingly and intelligently waive his right to counsel and was denied counsel at a critical stage of the trial.

## ISSUE ONE

¶18 Did the District Court violate Garner's due process rights by failing to hold a hearing to determine Garner's competence to stand trial?

¶19 Garner argues that he was not competent at the time he entered his guilty pleas because he was not taking his prescribed antidepressant medication. He further argues that his behavior at trial, along with his attorney's expressed doubt about his competence, provided enough evidence to require a hearing into his competence. The State, on the other hand, contends that this evidence was insufficient to require the District Court to hold such a hearing. We agree with the State.

¶20 The due process clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. *See, e.g., Drope v. Missouri* (1975), 420 U.S. 162, 171-172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103-04. Montana law codifies a similar right whereby a person who is unable to understand the proceedings against him or herself or to assist in his or her own defense as a result of mental disease or defect may not be tried, convicted, or sentenced for the commission of an offense so long as the incapacity endures. *See* § 46-14-103, MCA.

¶21 The standard for determining whether an accused is competent to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States* (1960), 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825, *adopted in State v. Austad* (1982), 197 Mont. 70, 78, 641 P.2d 1373, 1378. Even if a defendant is competent at the beginning of trial, a trial judge must "always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope*, 420 U.S. at 181, 95 S.Ct. at 908. When sufficient doubt is raised as to an accused's

competency to stand trial, the district court has a duty to sua sponte order a hearing on this issue. *See State v. Bartlett* (1997), 282 Mont. 114, 120, 935 P.2d 1114, 1118.

¶22 We inquire whether substantial evidence supports the district court's decision that the defendant was fit to proceed to trial when reviewing a district court's finding of competence. *State v. Santos* (1995), 273 Mont. 125, 130, 902 P.2d 510, 513 (citations omitted).

¶23 Garner argues that evidence of his lack of medication necessitated a competency hearing. We disagree. There can be "no fixed or immutable signs which invariably indicate the need for further inquiry," as inquiry into an accused's competency is necessarily based on the individual circumstances presented. *Drope*, 420 U.S. at 180, 95 S. Ct. at 908. A defendant's use of drugs, prescription or otherwise, certainly may be a relevant factor in determining competency, but it does not per se necessitate a competency hearing. *See Fallada v. Dugger* (11th Cir. 1987)*, 819 F.2d 1564, 1569; *Price v. Wainwright* (11th Cir. 1985), 759 F.2d 1549, 1555, *overruled on other grounds by United States v. Hogan* (11th Cir. 1993), 986 F.2d 1364, 1371 n.2; *United States ex rel. Fitzgerald v. LaVallee* (2d Cir. 1972), 461 F.2d 601, 602, *cert. denied* 409 U.S. 885, 93 S.Ct. 121, 34 L.Ed.2d 142 (1972). Other indicia of an accused's incompetency may include the accused's demeanor at the trial, a prior medical opinion on competence, the nature of the crime, past behavior of the accused, and a claimed defense of mental instability. *Compare Pate v. Robinson* (1966)*, 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815 (holding that evidence introduced at trial entitled defendant to hearing on competency), *Drope,* 420 U.S. at 180-83, 95 S.Ct. at 908-09 (holding that correct course for trial court was to suspend trial until evaluation could be made)*, and State v. Bostwick,* 1999 MT 237, ¶28, 296 Mont. 149, ¶28, 988 P.2d 765, ¶28 (holding that record presented indicia of incompetence that required hearing), *with Speedy v. Wyrick* (8th Cir. 1984), 748 F.2d 481, 487 (holding that record provided insufficient evidence to raise reasonable doubt concerning defendant's competence), *and Bartlett*, 282 Mont. at 121-22, 935 P.2d at 1118 (holding that despite indicia of incompetence, the evidence did not rise to level that required court to sua sponte order competency hearing).

¶24 In examining the record presented, we believe that Garner's indicated use of medication did not rise to a level sufficient to require the District Court to sua sponte order a competency hearing. The record shows that the issue regarding defendant's medication only arose during a discussion about the strained relationship between Garner and LaFountain. During this discussion, LaFountain indicated to the court that he wished to

address the issue of Garner's medication prior to continuing trial. The transcript of this conversation follows.

> LAFOUNTAIN: Second point is, I would like to put Mr. Garner on the stand to question him about his medication situation. I've had difficulty dealing with him in the past, and part of it has had to do with some, I feel with some type of a problem he's been medicated for, or maybe this isn't the appropriate time.

> But basically, he was brought down here from Montana State Prison without his medications. I was told by the jail at one point he went into a sweat. And --

> THE COURT: Have you arranged --

> LAFOUNTAIN: When he first came down here he was more cooperative than he had ever been. He was under the influence of his medication.

> GARNER: You are an idiot.

> THE COURT: Mr. Garner, you're out of order.

> GARNER: I've had enough. Go ahead and send me back to jail. He has no rapport with these people over here. These people up here sit and laugh at him. This guy has asked me if I would like more paper to write things down. This is a joke.

> THE COURT: Mr. Garner, sit down. You're going to be in order or you're going to be shackled. Now, I don't want any more outbursts. Mr. LaFountain, what kind of medication are you talking about here?

> GARNER: I'm on antidepressants. This has nothing to about being depressed. It has to do with being very angry about that man's incompetence if nothing less.

> THE COURT: Ms. Macek. Any comment?

> MACEK: No, Your Honor. Mr. Garner's indicated what medication he's on. The fact that he feels that he's prepared to proceed and I would suggest we get the show on the road.

¶25 Clearly there was a strained relationship between defense counsel and Garner. Garner,

however, insisted that his depression was not a basis for the strained relationship between himself and LaFountain and he repeatedly told the Court that he was competent to proceed. Defense counsel's statements that Garner was "more cooperative than he had ever been" when he was under the influence of his medication does not rise to a level that requires the District Court judge to inquire as to defendant's competence.

¶26 Garner also argues that his overall behavior at trial necessitated a competency hearing. On the contrary, we find that Garner's behavior indicated a fair degree of competency. While Garner was at times animated, if not belligerent, he capably questioned witnesses and presented a cogent account of his actions. In addition, no other evidence casting doubt on Garner's competence was presented to the Court, such as indications of prior mental competency issues or a potential plea of insanity. When the District Court directly questioned Garner regarding his competence, he completely denied suffering from any mental or emotional impairment or defect that would prevent him from understanding what he was doing. Garner did not raise any issue before the court relating to not having his antidepressant medication prior to his guilty plea.

¶27 Finally, Garner argues that LaFountain's statement, "I had began to raise the issue before about competence, about Mr. - I don't know", intimated a concern about Garner's competency. LaFountain, however, never articulated any specific questions relating to the competency of his client. Defense counsel's expressed doubt concerning a defendant's competency is a factor to consider but is not enough standing alone to create sufficient doubt about the defendant's fitness to proceed. *See Bostwick*, ¶18 (citations omitted). In the case at hand, we do not feel that LaFountain's comment was enough to create a sufficient doubt about Garner's competency.

¶28 For the preceding reasons, we are convinced that the evidence presented before the trial judge did not raise a bona fide doubt as to Garner's capacity to participate in his trial. *See, e.g., Fallada,* 819 F.2d at 1569 (holding that evidence, including use of medication, did not raise sufficient doubt concerning competence to require a hearing).

¶29 Garner argues in the alternative that the District Court erred in not at least holding a retrospective competency hearing when presented with additional evidence. Again, we disagree. Although we have previously concluded that under certain circumstances a retrospective competency hearing may be held, such hearings are disfavored. *See Bostwick*, ¶30.

¶30 We have held in the past that there may be times when a retrospective hearing is appropriate, but we have not addressed whether supplemental evidence of an accused's competency could be used at a subsequent hearing. *See generally Bostwick*, ¶28-31. In support of his position that we should consider supplemental evidence, Garner directs us to *Boag v. Raines* (9th Cir. 1985), 769 F.2d 1341. While *Boag* does hold that a court may review new evidence of incompetence on habeas corpus, the court concluded that the evidence Boag presented was insufficient to raise a bona fide doubt as to his competence. *See Boag,* 769 F.2d at 1344. The court in *Boag* noted that in cases where the court found sufficient evidence of incompetency, the petitioners were able to show extremely erratic or irrational behavior during the trial. *See Boag,* 769 F.2d at 1343.

¶31 In this instance, Garner argues that subsequent evidence presented during sentencing concerning his previously attempted suicide and past psychological treatment should have required the District Court to grant a retroactive hearing. This evidence indicated that Garner was admitted to Montana State Hospital and treated for substance abuse, depression and other mental health problems approximately seven years prior to trial. Given the length of time elapsed since Garner's hospitalization and failure to demonstrate how this evidence affected his competence to stand trial, we conclude that the District Court properly declined to hold a retrospective competency hearing.

### ISSUE TWO

¶32 Did the District Court abuse its discretion by denying Garner's motion to withdraw his guilty pleas?

¶33 We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *See, e.g., State v. Keys*, 1999 MT 10, ¶11, 293 Mont. 81, ¶11, 973 P.2d 812, ¶11; *State v. Bowley* (1997), 282 Mont. 298, 304, 938 P.2d 592, 595. Garner, however, urges this Court to employ de novo review because "the issue here addresses, in part, whether Garner was competent to stand trial or to waive his rights and enter knowing, intelligent, and voluntary guilty pleas." We decline to do so. The question of competency to stand trial and the ability of a defendant to enter a voluntary and intelligent guilty plea are two separate inquiries. We see no reason to modify the standard of review of either inquiry in the case before us.

¶34 We therefore turn directly to the question of whether the District Court erred in denying Garner's motion to withdraw his guilty pleas. Garner contends that the court erred

in applying our three-part test set forth in *Bowley* when it decided not to permit Garner to withdraw his guilty pleas. Because a criminal defendant waives numerous constitutional rights and protections when pleading guilty, "it is a well-settled legal principle that a guilty plea must be a voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." *Bowley,* 282 Mont. at 304, 938 P.2d at 595 (citations omitted); *see also Keys*, ¶11 (stating that a court may permit a defendant to withdraw his guilty plea for good cause). Therefore, in determining whether good cause existed and whether a district court abused its discretion in refusing to allow withdrawal of a guilty plea we consider (1) the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea; (2) the promptness with which the defendant attempts to withdraw the plea; and (3) the fact that the plea was the result of the plea bargain in which the guilty plea was given in exchange for dismissal of another charge. *See Bowley*, 282 Mont. at 304, 938 P.2d at 595.

¶35 We first address whether the interrogation by the District Court was adequate as to Garner's understanding of the consequences of his plea. An interrogation is sufficient if the judge "examines the defendant, finds him to be competent, and determines from him that his plea of guilty is voluntary, he understands the charge and his possible punishment, he is not acting under the influence of drugs or alcohol, he admits his counsel is competent and he has been well advised, and he declares in open court the facts upon which his guilt is based." *State v. Walker* (1986), 220 Mont. 70, 72, 712 P.2d 1348, 1350 (citations omitted); *see also* § 46-16-105(1), MCA.

¶36 After careful consideration of the record, we conclude that Garner was adequately questioned about his desire to plead guilty and fully informed of his right to continue with a plea of not guilty. The District Court and the prosecutor thoroughly questioned Garner before he entered his plea. Garner was informed of the ramifications of pleading guilty, including potential prison sentences and fines on each charge, the potential sentence as a persistent felony offender, the potential loss of rights to appeal and the fact that the court could designate Garner as a dangerous offender.

¶37 Garner also admitted to the facts of the forgery and the theft. He stated "[o]n the forgery, I forged a check to cash it. And I left." He then agreed to certain details of the forgery. As to the theft, he stated, in part, "[t]heft? I was going through Missoula and I found a truck and stole it." We therefore conclude that the District Court, with additional questioning provided by the prosecution, adequately interrogated Garner before entering his guilty plea.

¶38 Next, we turn to the promptness with which the defendant attempted to withdraw the prior plea. Garner filed his motion for postconviction relief just shy of four years after he entered his guilty plea. Garner argues that, taken alone, this factor should not support a denial of relief because the District Court failed to inquire as to the reasons for the delay. We agree that Garner's almost four year failure to attempt to withdraw his plea is not a per se bar to withdrawing his guilty plea. We note, however, that Garner had ample opportunity to raise his claim over the past four years while represented by counsel and while raising other claims. Thus, we conclude that the District Court did not err in determining that a delay of four years, together with defendant's prior motions, can only lead to the conclusion that defendant's motion does not satisfy the requirements of promptness.

¶39 The final factor to consider is whether entry of a plea is the result of a plea bargain. Garner urges that the lack of a plea bargain should weigh in his favor. We disagree. Because there is no plea bargain here, this factor is not relevant. *See State v. Long* (1987), 227 Mont. 199, 202, 738 P.2d 487, 489 (holding that the third factor is not pertinent when defendant's plea was not given in exchange for a dismissal of a different charge).

¶40 In summary, after weighing the three factors, we conclude that the District Court did not abuse its discretion in denying Garner's motion to withdraw his guilty plea.

## ISSUE THREE

¶41 Did Garner's motion to withdraw his guilty pleas constitute a critical stage of the proceedings?

¶42 Garner filed a Motion to Withdraw a Guilty Plea on November 15, 1999, nearly three years after filing his petition for postconviction relief. He argues that a motion to withdraw a guilty plea constitutes a critical stage of the proceedings at which a right to counsel attaches. He contends that he therefore must expressly waive his right to counsel, which he did not do.

¶43 Garner's argument relies on numerous non-Montana cases where the right to counsel was found to attach to a motion to withdraw a guilty plea. *See, e.g., United States v. Sanchez-Barreto* (1st Cir. 1996), 93 F.3d 17, 20; *United States v. Crowley* (3d Cir. 1976), 529 F.2d 1066, 1069; *United States v. Garrett* (7th Cir. 1996), 90 F.3d 210, 212; *United States v. White* (D.C. Cir. 1981), 659 F.2d 231, 233; *State v. Harell* (Wash. Ct. App.

1996), 911 P.2d 1034, 1035; *Fortson v. State* (Ga. 2000), 532 S.E.2d 102, 104. This Court, however, has not established any bright line as to when in the sequence of proceedings the right to counsel attaches. *See Ranta v. State*, 1998 MT 95, ¶25, 288 Mont. 391, ¶25, 958 P.2d 670, ¶25 (expressly declining to "march lock-step" with the Supreme Court's interpretation of comparable U.S. Constitutional rights). Instead, we have held that a right to counsel attaches at any "critical stage," which is defined as "any step of the proceedings where there is potential for substantial prejudice to the defendant." *Ranta*, ¶25.

¶44 Garner filed his motion almost four years after his guilty plea and almost three years after he filed his petition for postconviction relief. Furthermore, Garner has been represented by three different attorneys during the course of his legal proceedings. Given the length of time since trial and the ample opportunities of representation Garner has enjoyed, we conclude that his pro se motion to change his pleas did not raise the potential for substantial prejudice to the defendant. Therefore, his motion did not constitute a critical stage of the proceedings and a right to counsel did not attach.

¶45 We note in passing that Garner contends that the District Court did not properly question him when he first waived his right to counsel at trial. Garner failed to raise this claim in his original or amended motion for postconviction relief. Because all grounds for relief claimed in a postconviction appeal must be raised in an original or amended petition for postconviction relief, we decline to address this issue. *See* § 46-21-105(1)(a), MCA.

¶46 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

Justice W. William Leaphart dissenting:

¶47 I dissent from our holding that the District Court did not err in failing to hold a hearing to determine Garner's competence to stand trial.

¶48 The standard for determining whether an accused is competent to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *State v. Austad* (1982), 197 Mont. 70, 78, 641 P.2d 1373, 1378. When sufficient doubt is raised as to an accused's competency to stand trial, the district court has a duty to *sua sponte* order a hearing on this issue. *See State v. Bartlett* (1997), 282 Mont. 114, 120-21, 935 P.2d 1114, 1118.

¶49 The record before us clearly indicates there was sufficient doubt as to Garner's ability to consult with his lawyer with a reasonable degree of rational understanding.

¶50 Counsel represented to the court that, due to Garner's medications, he had difficulty dealing with Garner in the past; that Garner was "brought down here without his medications" and that he went into a sweat; and that when he was under the influence of his medications, Garner was more cooperative than he had ever been. Garner responded to counsel's representations with, "You're an idiot." Furthermore, counsel expressed concern about Garner's competency when he stated: "I had began to raise the issue before about competence, about Mr.-I don't know."

¶51 We thus have the presence of three indicia of incompetency: the use and withdrawal of medications; a clear inability to consult with counsel with a reasonable degree of rational understanding; and, finally, counsel's expressed concern about his client's competency. Although any one of these indicators standing alone may not be adequate to create a sufficient doubt as to Garner's fitness to proceed, the three in combination raise a bona fide doubt as to Garner's capacity to participate in his trial such that the court, *sua sponte*, should have held a competency hearing. *Bartlett*, 282 Mont. at 120-21, 935 P.2d at 1118.

¶52 The Court notes that no other evidence casting doubt on Garner's competence was presented to the District Court, such as indications of prior mental competency issues or a potential for insanity. That observation, however, begs the very question at issue. Since there was no competency hearing, it is not surprising that no other evidence of incompetency was presented.

¶53 Failure to hold a competency hearing as to Garner's competency to stand trial invalidates the remainder of the proceedings, including Garner's change of plea after the settling of jury instructions. For that reason, I would also reverse and hold that the District Court abused its discretion by denying Garner's motion to withdraw his guilty plea.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson dissents.

¶54 I join Justice Leaphart in his dissent. Additionally, I would hold that the trial court erred in denying Garner's motion to withdraw his guilty pleas and in not appointing him counsel for the withdrawal-of-plea proceedings.

¶55 Justice Leaphart correctly points out that Garner exhibited sufficient indicia of incompetency that the trial court should have held a competency hearing. It flies in the face of logic and common sense--if not medical sense--that within the span of a few hours and during the course of the trial (which he referred to as a "joke"), Garner, acting without his prescribed psychotropic medication, fired his counsel, proceeded to represent himself, and then decided to plead guilty as the instructions were being settled.

¶56 This whole matter might have been avoided had the trial judge not erred by failing to conduct an appropriate inquiry as required by *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, to determine whether Garner was making a knowing and intelligent choice to forgo the benefit of counsel. Under *Faretta*, the court must advise the prospective *pro se* litigant of the dangers and disadvantages of self-representation. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. Moreover, the waiver of counsel and invocation of the right to proceed *pro se* must be voluntarily made, *State v. Colt* (1992), 255 Mont. 399, 404, 843 P.2d 747, 750, and must be unequivocal, *State v. Langford* (1994), 267 Mont. 95, 99, 882 P.2d 490, 492, *cert. denied*, 513 U.S. 1163, 115 S.Ct. 1128, 130 L.Ed.2d 1090.

¶57 In my view, at least, the colloquy cited by the majority demonstrates that Garner's choice to represent himself was anything but knowing or intelligent. Garner was dissatisfied with his counsel--whom he referred to as an "idiot." His focus was entirely directed to what he considered to be his attorney's failures and not to the business of his ability to represent himself and the dangers of doing so. And, as already noted, throughout all of this Garner did not have the benefit of his medications which might have enhanced

his ability to give more considered deliberation to his situation and decision. The trial court's *Faretta* examination was little more than a *pro forma* Q and A on the basics, such as stating the maximum sentence and asking; "Do you really want to do this?" and "Do you know what you're doing?" The colloquy did not probe Garner's mental competency (or, rather, the lack thereof) to represent himself and how that might be affecting his decision to represent himself.

¶58 Finally, I would hold that a proceeding to withdraw a guilty plea is a "critical stage" of the proceedings that requires the appointment of counsel. A defendant's right to counsel arises at every critical stage of the proceedings against him. *Coleman v. Alabama* (1970), 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387; *United States v. Wadsworth* (9th Cir. 1987), 830 F.2d 1500, 1510. In *State v. Finley* (1996), 276 Mont. 126, 144-45, 915 P.2d 208, 220, overruled on other grounds by *State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817, we defined a "critical stage" as "any step of the proceeding where there is potential substantial prejudice to the defendant." *Finley* involved a post-trial hearing to determine whether Finley's complaints against his counsel were "substantial." *Finley*, 276 Mont. at 131-32, 915 P.2d at 212.

¶59 The great weight of authority is that a withdrawal-of-plea hearing is a "critical stage" of the proceedings requiring the appointment of counsel. *See United States v. Sanchez-Barreto* (1st Cir. 1996), 93 F.3d 17, 20; *United States v. Crowley* (3rd Cir. 1976), 529 F.2d 1066, 1069; *United States v. Garrett* (7th Cir. 1996), 90 F.3d 210, 212; *United States v. White* (D.C. Cir. 1981), 659 F.2d 231, 233; *State v. Harrell* (Wash. Ct. App. 1996), 911 P.2d 1034, 1035; *Browning v. Commonwealth* (Va. Ct. App. 1994), 452 S.E.2d 360, 362; *Randall v. State* (Okla. Crim. App. 1993), 861 P.2d 314, 316; *Berry v. State* (Ala. Crim. App. 1993), 630 So.2d 127, 129; *Martin v. State* (Ind. Ct. App. 1992), 588 N.E.2d 1291, 1293; *Beals v. State* (Nev. 1990), 802 P.2d 2, 4; *Lewis v. United States* (D.C. 1982), 446 A.2d 837, 841; *People v. Holmes* (Ill. App. Ct. 1973), 297 N.E.2d 204, 206; *People v. Skelly* (N.Y. App. Div. 1967), 281 N.Y.S.2d 633, 634.

¶60 Garner's right to assistance of counsel was self-executing and remained until validly waived by him. *See Spencer v. Ault* (N.D. Iowa 1996), 941 F.Supp. 832, 840. Garner, thus, had an automatic right to the assistance of counsel under Article II, Section 24 of the Montana Constitution and under the Sixth and Fourteenth Amendments of the federal constitution, during the stage at which he sought to withdraw his guilty pleas. Garner did not waive this right and denial of counsel was *per se* prejudicial error. *United States v. Cronic* (1984), 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657.

¶61 For those reasons set forth in Justice Leaphart's dissent and above, I also dissent.

/S/ JAMES C. NELSON