DA 09-0249

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 443

IN THE MATTER OF G.T.M.,

a Youth.

APPEAL FROM:   District Court of the Ninth Judicial District,
In and For the County of Pondera, Cause No. DJ 07-05
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Justin B. Lee; Burke, Lee & Bieler, PLLC, Choteau, Montana

For Appellee:

Hon. Steve Bullock, Montana Attorney General; Mardell Ployhar,
Assistant Attorney General, Helena, Montana

Mary Ann Ries, Pondera County Attorney, Conrad, Montana

Submitted on Briefs:  October 21, 2009

Decided:  December 23, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     G.T.M. appeals from an order of the Ninth Judicial District Court, Pondera County Youth Court, denying his motion to dismiss for lack of capacity to stand trial.  We affirm.

¶2     We restate the issues for review as follows:

¶3     Whether the Montana Youth Court Act violates the constitutional right to equal protection by not providing a procedure to evaluate the competency of youths.

¶4     Whether the Youth Court violated G.T.M.'s due process rights by determining that he had the capacity to stand trial and appreciate that his conduct was wrong.

## BACKGROUND

¶5     On August 13, 2007, G.T.M., who was then nine years old, and another youth started a fire inside an unoccupied house in Conrad.  The boys soon became scared, attempted to put out the fire, and then fled.  The fire destroyed the house.

¶6     The State filed a petition alleging that G.T.M. was a delinquent youth on September 13, 2007.  The petition charged G.T.M. with felony arson and misdemeanor criminal trespass.  Counsel entered denials for G.T.M. and raised lack of capacity as an affirmative defense.  Clinical psychologist Dr. Lynn Johnson (Dr. Johnson) assessed G.T.M.'s ability to have formed the requisite mental intent to commit the crimes alleged and to effectively assist his counsel in his defense.  Based on this evaluation, on January 25, 2008, G.T.M.'s counsel filed a motion to dismiss, arguing that the youth was too young to form the necessary criminal intent, to understand the process against him, and to effectively assist counsel in his own defense.  In response, on February 20, 2008, the

2

State amended its petition to allege G.T.M. was a youth in need of intervention, rather than a delinquent youth, for the underlying offense of negligent arson, rather than arson.

¶7 The Youth Court held a hearing on the motion to dismiss on April 7, 2008. The court indicated that the report of Dr. Johnson was unclear as to his conclusions and that testimony from G.T.M. might be helpful. So the court held another hearing on May 8, 2008. The court advised G.T.M. of his rights, over the objection of his counsel who represented that G.T.M. could not understand them. However, the court was satisfied that the youth understood his rights. Dr. Johnson presented testimony, was cross-examined by the State, and answered questions posed by the court. Dr. Johnson found G.T.M. to be a normal nine-year-old child with "no indications of mental illness, pathological personality, or delinquent disposition." His report indicated G.T.M. "can tell his attorney about his view of the incident and thereby assist in his own defense," but that he does not clearly understand the judicial process. He also opined that it would be a rare nine-year-old child who could appreciate the criminality of acts such as these. Dr. Johnson testified that G.T.M. knew he was starting a fire with a lighter and that he was aware that a fire was dangerous and should be put out. He indicated that G.T.M. became alarmed because he could appreciate the risk a fire posed. The court found that the youth knew setting the fire was wrong based on his "running from the house upon being seen

3

by an adult," his attempt to cover up the burnt spot, and his admission that he fled because he was scared. The court denied G.T.M.'s motion to dismiss on June 12, 2008.[1]

¶8 At the change of answer hearing on March 6, 2009, G.T.M. again was advised of his rights, again indicated that he understood those rights, and testified about the incident. He answered "true" to the charge of youth in need of intervention to accountability to negligent arson. The court ordered G.T.M. committed to the youth court for placement on probation for two years, subject to conditions including counseling, school attendance, a curfew, and a prohibition on possession of matches or lighters. G.T.M. now appeals.

## STANDARD OF REVIEW

¶9 This Court reviews de novo the denial of a motion to dismiss a formal petition in youth court to determine whether the court correctly interpreted the law. *Matter of R.L.H.*, 2005 MT 177, ¶ 15, 327 Mont. 520, 116 P.3d 791. This Court reviews a court's finding of competence to determine whether substantial evidence supports the finding. *State v. Garner*, 2001 MT 222, ¶ 22, 306 Mont. 462, 36 P.3d 346. Statutes enjoy a presumption of constitutionality and the person challenging a statute's constitutionality bears the burden of proving it unconstitutional beyond a reasonable doubt. *State v. Knudson*, 2007 MT 324, ¶ 12, 340 Mont. 167, 174 P.3d 469. This Court exercises plenary review of questions of constitutional law, and reviews a district court's application of the Constitution to determine if it is correct. *Knudson*, ¶ 12. This Court

---

[1] G.T.M. petitioned this Court for supervisory control to review the denial of his motion to dismiss. This Court denied the petition on September 24, 2008, noting that G.T.M. retained the remedy of direct appeal.

4

reviews a youth court's interpretation and application of the Youth Court Act for correctness. *Matter of K.D.K.*, 2006 MT 187, ¶ 14, 333 Mont. 100, 141 P.3d 1212.

**DISCUSSION**

¶10    *Whether the Montana Youth Court Act violates the constitutional right to equal protection by not providing a procedure to evaluate the competency of youths.*

¶11    G.T.M. argues that the Montana Youth Court Act violates his constitutional right to equal protection by not providing a procedure and standards to evaluate the competency of youths.   Montana law provides a procedure for examining an adult defendant's mental condition when fitness to proceed is at issue.  *See* §§ 46-14-202 through -222, MCA.  However, the Youth Court Act contains no similar provision for a youth whose immaturity may affect his fitness to proceed.   G.T.M. claims that this violates equal protection.

¶12    "In addressing an equal protection challenge, we first identify the classes involved and determine whether they are similarly situated."  *Matter of S.L.M.*, 287 Mont. 23, 32, 951 P.2d 1365, 1371 (1997).  In *Matter of S.L.M.*, this Court determined that youths sentenced as adults under the Extended Jurisdiction Prosecution Act and adults sentenced for committing the same offense are similarly situated classes for purposes of equal protection.  287 Mont. at 32-33, 951 P.2d at 1371.  In that case, youths and adults faced the same sentencing for committing the same offense.  Conversely, in *Matter of C.S.*, this Court determined that youths and adults were not similarly situated with respect to sentencing laws, primarily based on different purposes for juvenile and adult commitments and applications of the doctrine of *parens patriae*.  210 Mont. 144, 146-47,

5

687 P.2d 57, 59 (1984). In that case, youths in the youth court system and adults in the criminal justice system faced different dispositions for committing the same offense.

¶13 The classes here are not similarly situated. Like the youth in *Matter of C.S.* and unlike the youths in *Matter of S.L.M.*, G.T.M. faces a different disposition for negligent arson as a youth in need of intervention in youth court than an adult would face in district court. *Compare* § 41-5-345, MCA, *with* § 45-6-102, MCA. In fact, an order of adjudication from a youth court is considered noncriminal and a youth in need of intervention may not be placed in a jail, secure detention facility, or correctional facility. Sections 41-5-106, -345(2), MCA; *State ex rel. Elliot v. Dist. Ct.*, 211 Mont. 1, 4-5, 684 P.2d 481, 483 (1984). The consequences for G.T.M. alleged to be a youth in need of intervention for negligent arson are significantly different than an adult charged with the same underlying offense of negligent arson.

¶14 This critical distinction between youths and adults notwithstanding, G.T.M. complains that adults benefit from procedures to determine whether they are mentally competent to proceed, while youths are not protected by similar procedures to determine whether they are mentally competent to proceed. However, a youth alleging incompetency based on immaturity is not similarly situated to an adult criminal defendant alleging mental disease or defect. All youths experience a period of immaturity, which most youths outgrow. The same cannot be said for mental disease or defect. In fact, Montana law provides detailed procedures for determining incompetency based on mental disease or defect that are simply not applicable to youths claiming immaturity. *See* §§ 46-14-202 through -222, MCA. Significantly, these procedures dictate that when

6

a defendant lacks fitness to proceed, the court shall commit the defendant to an appropriate mental health facility for the duration of the unfitness. Section 46-14-221(2), MCA. The logical extension of G.T.M.'s argument would require immature youths to be placed in mental health facilities until they are mature enough to stand trial.[2]

¶15　Adults and youths are different, and so are the court systems that recognize those differences. The U.S. Supreme Court discussed key differences between juveniles and adults in its landmark decisions holding that the death penalty cannot be imposed on juvenile offenders. *Roper v. Simmons*, 543 U.S. 551, 569-71, 125 S. Ct. 1183, 1195-96 (2005); *Thompson v. Oklahoma*, 487 U.S. 815, 833-38, 108 S. Ct. 2687, 2698-2700 (1988). The youth court system was specifically designed to appropriately address the youthful indiscretions resulting from immaturity. The U.S. Supreme Court discussed how the distinct needs of youths are promoted by ensuring their ongoing access to rehabilitative, rather than punitive, juvenile justice systems. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 539-40, 91 S. Ct. 1976, 1983-84 (1971); *In re Gault*, 387 U.S. 1, 15-16, 87 S. Ct. 1428, 1437 (1967). Likewise, this Court recently noted:

> Montana recognizes that youths are to be given special treatment by the courts. The youth court system is designed to promote individual rehabilitation and allow young people to learn positive lessons from their transgressions. In youth court, these young people are not subject to the same criminal sanctions as are adults. An express legislative purpose of the Montana Youth Court Act is "to prevent and reduce youth delinquency through a system that does not seek retribution but that provides: (a) immediate, consistent, enforceable, and avoidable consequences of youths' actions; (b) a program of supervision, care, rehabilitation, detention, competency development, and community protection for youth before they

---

[2] Montana law does provide youths found to be suffering from a mental disorder with the same rights as adults. Section 41-5-1504, MCA.

7

become adult offenders[.]" Section 41-5-102(2), MCA; *In re D.A.S.*, 2008 MT 168, ¶ 11, 343 Mont. 360, 184 P.3d 349; *Matter of S.L.M.*, 287 Mont. 23, 35-36, 951 P.2d 1365, 1373 (1997).

*Matter of Youth in Cascade Co. Dist. Ct.*, 2009 MT 355, ¶ 14, 353 Mont. 194, -- P.3d --.

This Court has also addressed the question of incompetency due to immaturity before:

> Reading the Youth Court Act as a whole in light of this declaration of purpose, we find the Act is designed to provide a separate method of treatment for youths while they are youths, with the ultimate goal of rehabilitation. Nowhere in the Youth Court Act has the Legislature declared that a youth is incapable of committing a crime. We believe that had the Legislature intended to establish such a rule, it would have expressly stated so.

*Elliot*, 211 Mont. at 8, 684 P.2d at 484. Given the unique purposes of the Youth Court Act, we conclude that youths alleging incompetency based on immaturity are not similarly situated to adult criminal defendants alleging mental disease or defect. Therefore, equal protection was not implicated here.

¶16 *Whether the Youth Court violated G.T.M.'s due process rights by determining that he had the capacity to stand trial and appreciate that his conduct was wrong.*

¶17 G.T.M. argues that the Youth Court violated due process when it denied his motion to dismiss, claiming that he established by a preponderance of the evidence that he lacked the capacity to proceed. G.T.M. contends that he was deemed by a qualified medical professional to lack the competence required to stand trial, and further that this determination remained unrebutted by any evidence in the record.

¶18 Due process prohibits the criminal prosecution of a defendant who is not competent to stand trial. *Garner*, ¶ 20 (*citing Drope v. Missouri*, 420 U.S. 162, 171-72, 95 S. Ct. 896, 904 (1975)). Montana law codifies a similar right whereby "[a] person

8

who, as a result of mental disease or defect or developmental disability, is unable to understand the proceedings against the person or to assist in the person's own defense may not be tried, convicted, or sentenced for the commission of an offense so long as the incapacity endures." Section 46-14-103, MCA. Although no similar provision regarding the competency of youths applies in Montana, youths are entitled to the same or greater due process rights as adults. Mont. Const. art. II, § 15; *Gault*, 387 U.S. at 13, 27-28, 87 S. Ct. at 1436, 1444; *Kent v. United States*, 383 U.S. 541, 562, 86 S. Ct. 1045, 1057 (1966).

¶19 The Youth Court provided G.T.M. with adequate due process by holding hearings on his competency to proceed, applying the appropriate standard, and concluding on the basis of substantial evidence that G.T.M. was competent. The Youth Court held two hearings on G.T.M.'s competency: on April 7, 2008, the court admitted a report from Dr. Johnson regarding G.T.M.'s mental capacity to proceed, and on May 8, 2008, Dr. Johnson testified regarding his evaluation of G.T.M.'s competency. Despite these two hearings on G.T.M.'s competence, G.T.M. argues that he did not receive adequate due process because the Youth Court "refused to consider what was clearly a preponderance of the evidence." G.T.M. relies on the fact that the State did not present its own evidence in order to support this contention; however, the State did cross-examine Dr. Johnson and effectively demonstrated inconsistencies in his testimony.

¶20 When reviewing a court's finding of competence, this Court determines whether substantial evidence supports the decision that the defendant was fit to proceed to trial. *Garner*, ¶ 22. "The standard for determining whether an accused is competent to stand

trial is 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Garner*, ¶ 21 (*citing Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960)); *see also* § 46-14-103, MCA.

¶21 Our review of the record satisfies us that substantial evidence supported the Youth Court's findings that G.T.M. could consult with his attorney and understand the proceedings against him. Dr. Johnson testified that G.T.M. was a normal nine-year-old boy without a mental disease or defect. Dr. Johnson informed the court that it would be rare that a nine-year-old child would be able to assist counsel. However, Dr. Johnson's report stated that G.T.M. "can tell his attorney about his view of the incident and thereby assist in his own defense." Dr. Johnson indicated that G.T.M. vaguely understood the role of his attorney, the witnesses, the judge, and the jury, although he did not understand the role of the prosecuting attorney. On cross-examination, Dr. Johnson told the court that he did not know if anybody had explained the trial process to G.T.M. before Dr. Johnson drew his conclusion about G.T.M.'s understanding of the process. Dr. Johnson testified that he did not think G.T.M. had a rational and factual understanding of the proceedings. However, the court is not limited by the opinion of any expert and the judge can form her own opinion. *See State v. Tison*, 2003 MT 342, ¶ 15, 318 Mont. 465, 81 P.3d 471. The Youth Court noted that G.T.M. indicated understanding his rights when the judge explained those rights to him. The court interviewed G.T.M. in simple language to assure that he understood the proceedings. While his attorney objected to

this colloquy on the grounds that G.T.M. was too immature to understand his rights, G.T.M. affirmatively indicated that he understood the judge's explanations. We conclude that G.T.M. could consult with his attorney and understand the proceedings.

¶22 Moreover, substantial evidence supported the Youth Court's determination that G.T.M. could form the criminal intent required to commit negligent arson. Dr. Johnson testified that G.T.M. knew he was starting a fire with a lighter and was aware that fire was dangerous and should be put out. G.T.M. attempted to put out the fire and hide it with a piece of wood and then ran from the house because he was scared. As the Youth Court reasoned, G.T.M.'s actions demonstrate that he knew setting the fire was wrong. The criminal intent required for negligent arson is purposefully or knowingly starting a fire. Section 45-6-102, MCA. Thus, G.T.M. did not need to have intended to commit a crime or to burn down the house. G.T.M. only needed to have intended to start a fire. The Youth Court had substantial evidence to conclude that G.T.M. intended to start the fire.

¶23 In sum, G.T.M. was fit to proceed. He did not suffer from a mental disorder. He could assist his attorney by explaining what happened. Furthermore, G.T.M. appreciated that starting the fire was wrong. Thus, the Youth Court did not deny G.T.M. due process by denying his motion to dismiss because the court held hearings at which substantial evidence was introduced to determine that G.T.M. was competent to proceed.

¶24 Affirmed.

/S/ MIKE McGRATH

11

We concur:

/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice Patricia O. Cotter dissents.

¶25    I dissent from the Court's disposition of Issue Two. I would reverse the Youth Court's conclusion that G.T.M. had the capacity to stand trial and appreciate that his conduct was wrong. I would not reach Issue One.

¶26    The standard for determining whether a criminal defendant is mentally competent to stand trial is set forth in § 46-14-103, MCA (2007). That section states that "[a] person who, as a result of mental disease or defect or developmental disability, is unable to understand the proceedings against the person or to assist in the person's own defense may not be tried, convicted, or sentenced for the commission of an offense so long as the incapacity endures." We have also explained that the standard for determining whether an individual is competent to stand trial is whether that person has " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether *he has a rational as well as factual understanding of the proceedings against him.*' " *State v. Garner*, 2001 MT 222, ¶ 21, 306 Mont. 462, 36 P.3d 346 (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960) (emphasis added). G.T.M. is entitled to these due process protections. *See e.g.* Mont. Const. Art. II, § 15.

12

¶27   G.T.M.'s expert, Dr. Johnson, testified that while G.T.M. could cooperate with the Youth Court and comply with the court's instructions, G.T.M. could not necessarily understand the proceedings, the different penalties at issue, and the possible consequences associated with those penalties.  When asked by counsel for G.T.M. whether G.T.M. had "the rational, as well as, factual understanding of these proceedings against him," Dr. Johnson replied that G.T.M. did not.  Dr. Johnson's report stated that "[a]ll factors regarding competency are measured on a five-point scale with 1 representing low competency and 5 representing high competency," and that G.T.M. "scored on average 1.3 indicating a very low level of competency to proceed."  The overarching thrust of Dr. Johnson's expert testimony and report is that G.T.M. lacked the mental capacity to stand trial.

¶28   The Court concludes at ¶ 21 of the Opinion that substantial evidence supported the Youth Court's finding that G.T.M. "could consult with his attorney and understand the proceedings against him," based, in part, on one sentence in Dr. Johnson's report that states that G.T.M. "can tell his attorney about his view of the incident and thereby assist in his own defense."  I respectfully disagree with the Court's conclusion.  This statement from Dr. Johnson's report is taken out of context.

¶29   Dr. Johnson testified that what he meant by that statement is "that competency is not all or nothing."  Dr. Johnson testified that G.T.M. could cooperate with his attorney, behave obediently, and tell what he thinks happened, but that G.T.M. had very little understanding of the proceedings, the potential penalties that could be imposed by the court, and how those consequences might affect him.  Although G.T.M. was termed a "normal" nine-year-old child by Dr. Johnson, Dr. Johnson testified that G.T.M.'s immature cognitive development likely

13

prevented him from using classic logical reasoning. G.T.M., according to Dr. Johnson, lacked the mental capacity to stand trial.

¶30 The State had an opportunity to rebut Dr. Johnson's report and testimony by presenting its own expert, but it did not. Thus, the uncontradicted evidence before the Youth Court was that G.T.M. was not competent to stand trial because he did not understand the proceedings against him or the consequences associated with the proceedings. This being so, G.T.M. did not possess the "rational as well as factual understanding of the proceedings against him" that *Garner* demands. *Garner*, ¶ 21. I would therefore reverse the Youth Court's decision. I dissent from our failure to do so.

/S/ PATRICIA O. COTTER