FILED

01/13/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0172

DA 25-0172

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 5N

SCOTT WAYNE ELLISON,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV-23-064
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Scott Wayne Ellison, Self-Represented, Deer Lodge, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz,
Assistant Attorney General, Helena, Montana

          Joshua A. Racki, Cascade County Attorney, Kory Larsen, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  December 10, 2025

Decided:  January 13, 2026

Filed:

                  _____
                            Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Scott Wayne Ellison appeals the order of the Eighth Judicial District Court, Cascade County, denying his petition for postconviction relief (PCR) without an evidentiary hearing. Ellison's filings asserted numerous theories for relief, including unfitness to proceed, inability to form the requisite mental states, ineffective assistance of trial counsel, prosecutorial misconduct, and disability-law violations. The District Court denied the petition and concluded no hearing was warranted because the files and record conclusively showed Ellison was not entitled to relief.

¶3 The issue on appeal is whether the District Court erred by denying PCR without conducting an evidentiary hearing. We affirm.

¶4 We review a district court's denial of a PCR petition to determine whether the court's findings of fact are clearly erroneous and whether its legal conclusions are correct. A district court's decision to deny PCR without an evidentiary hearing is reviewed for abuse of discretion. *Ford v. State*, 2005 MT 151, ¶ 6, 327 Mont. 378, 144 P.3d 244. Ineffective assistance of counsel claims are reviewed under the familiar two-pronged constitutional test requiring both deficient performance and resulting prejudice. *State v.*

*Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)).

¶5 Postconviction proceedings also carry statutory pleading and proof requirements: the petitioner must identify supporting facts and provide affidavits, records, or other evidence establishing those facts. Courts may deny relief without a hearing when the petition does not meet that threshold or when the record conclusively demonstrates no entitlement to relief. Sections 46-21-104, -201, MCA.

¶6 A Cascade County jury convicted Ellison of multiple felony offenses involving sexual abuse of his adopted children. The District Court imposed six consecutive 100-year sentences. Ellison pursued a direct appeal and did not obtain relief.

¶7 In PCR, Ellison attempted to relitigate his convictions primarily through assertions that mental illness and traumatic brain injury (TBI) rendered him unfit to proceed, unable to assist counsel, and unable to form the required mental states. He also blamed alleged medication mismanagement by his wife and alleged medication lapses in detention for his purported inability to participate meaningfully in his defense. He relied heavily on packets of medical and mental health records—many dated years before the charged conduct and trial—along with self-authored statements and legal materials. Trial counsel submitted an affidavit responding to Ellison's ineffective-assistance allegations and describing Ellison's ability to understand proceedings, assist in his defense, and participate in trial strategy.

¶8 The District Court concluded that Ellison's materials were largely inadmissible hearsay and, even considered at face value, did not establish unfitness to proceed, inability to form mental state, or ineffective assistance. It denied the petition without a hearing.

3

## I. Scope of Review and Procedural Limits in PCR

¶9      Postconviction relief is not a second direct appeal and cannot be used to serially reframe a case with new theories after a conviction becomes final.  Statutory limits bar claims that could have been raised earlier, and appellate courts do not develop or supply arguments for a party who does not meaningfully brief them.  *Herman v. State*, 2006 MT 7, 330 Mont. 267, 127 P.3d 422.

¶10     Here, much of Ellison's briefing either reprises claims that were available on direct appeal (such as complaints about detention conditions or alleged prosecutorial misconduct) or advances disability-law assertions without developed argument tied to cognizable postconviction relief.  To the extent those theories were not properly preserved, were procedurally barred, or were insufficiently developed, they do not entitle Ellison to a hearing.

¶11     What remains at the core of Ellison's appeal is his argument that counsel was constitutionally ineffective for failing to request competency/fitness proceedings and for not pursuing a mental disease or defect theory.  Even when we view the appeal through that narrow lens, Ellison is not entitled to relief.

## II. Ineffective Assistance of Counsel

¶12     To prevail on a claim of ineffective assistance of counsel, Ellison must show that his attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability the result would have been different.  *Kougl*, ¶ 25. Ellison's primary contention is that his mental health history and TBI should have compelled counsel to seek a fitness evaluation or pursue a mental disease or defect defense.

4

### A. Deficiency

#### 1. Failure to seek a fitness evaluation

¶13    A fitness evaluation is not required simply because a defendant has a mental health diagnosis, a history of trauma, or treatment records reflecting symptoms at some point in time. The question is whether there was a reasoned, objective basis at the relevant time to doubt the defendant's present ability to understand the proceedings and assist counsel. *See State v. Garner*, 2001 MT 222, ¶¶ 21, 23, 306 Mont. 462, 36 P.3d 346. The record reflected no such basis.

¶14    The record reflects that Ellison demonstrated functional competence by participating in pretrial proceedings, answering questions appropriately, and reasonably appearing to understand the charges and penalties reviewed with him. When he testified at a pretrial hearing, he described medical and mental health issues and expressed dissatisfaction with aspects of his jail care, but the proceedings reflect responsive testimony and an ability to communicate. Trial counsel's affidavit further described Ellison as understanding the legal process, knowing counsel's role, and engaging in discussions about strategy—including Ellison's insistence that the children would not testify and his efforts to influence outcomes outside counsel's advice. This record does not show the type of inability to comprehend proceedings or assist in defense that would have required counsel to demand a fitness examination.

#### 2. Failure to pursue a mental disease or defect defense or mental state negation

¶15    A defense premised on mental disease or defect generally requires expert development tied to the controlling legal standards and, in many instances, would also

require a defendant to acknowledge the underlying alleged conduct to argue a lack of intent rather than denying it outright. Counsel's affidavit and the record show Ellison maintained he did not commit the charged conduct and believed the State could not prove its case. That strategy may have been unsuccessful, but it was not irrational on its face given Ellison's position at the time and counsel's role in pursuing a client-directed defense theory.

¶16 Moreover, Ellison did not present the type of contemporaneous, admissible expert evidence that would have supported a viable mental state defense under Montana law. The records he submitted were largely undated, disorganized excerpts, or predated the charged period by years; they were not presented through medical affiants applying the relevant statutory tests; and they did not establish incapacity to form the required mental states at the time of the offenses. On this record, Ellison has not overcome the presumption that counsel's decisions fell within the wide range of reasonable professional assistance.

## B. Prejudice

¶17 Even if Ellison could establish some deficiency, he must show a reasonable probability of a different outcome. The record contains powerful inculpatory evidence: the children's testimony describing repeated and escalating abuse over time. Particularly significant were Ellison's admissions to investigators in which he acknowledged core sexual conduct (while disputing or minimizing other aspects) and his video and written communications expressing remorse, anticipating incarceration, and discussing the consequences, all of which demonstrated a level of cognitive awareness and "mental state"

6

at the time of the offenses that directly contradicts a mental state negation defense and proved he understood the wrongfulness of his actions and the potential legal consequences.

¶18 Against that evidentiary backdrop, Ellison's postconviction submissions do not establish that a fitness challenge would likely have altered the outcome, nor that a mental disease or defect or mental state defense would probably have produced acquittal or a materially different result. His materials do not supply competent proof that he was unable to understand proceedings, assist counsel, or form the required mental states during the charged period. Without that showing, there is no basis to conclude the outcome would have been different.

### III. The District Court Did Not Abuse Its Discretion in Denying a Hearing

¶19 A petitioner is not automatically entitled to an evidentiary hearing. *Herman*, ¶ 49; *Jackson v. State*, 2025 MT 21, ¶¶ 13-14, 424 Mont. 244, 576 P.3d 876. The statutory scheme requires supporting evidence—affidavits, records, or other proof—showing entitlement to relief. When a petition rests on conclusory assertions or on materials that are inadmissible, incomplete, or not tied to the governing legal standards, the court may deny relief on the record. *Jackson*, ¶¶ 13-14.

¶20 That is what occurred here. The District Court identified the central defects: Ellison's medical materials were largely hearsay and incomplete; they did not establish the legal prerequisites for the relief requested; and the existing criminal record, together with counsel's affidavit, contradicted Ellison's competency and inability-to-assist claims. In these circumstances, denying a hearing was not arbitrary, was grounded in the

7

postconviction statutes' documentary threshold, and was well within the bounds of reasoned judicial discretion.

¶21    Because the record conclusively demonstrates no basis to doubt Ellison's fitness to proceed or capacity to form the required mental state, the District Court did not abuse its discretion in denying PCR without an evidentiary hearing. Ellison failed to satisfy the statutory requirement to support his factual allegations with competent evidence, and the record conclusively defeats his surviving ineffective-assistance claims. The District Court's order is affirmed.

¶22    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

/S/ KATHERINE M. BIDEGARAY


We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE