No. 00-439

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 185

THE STATE OF MONTANA,

Plaintiff and Respondent,

v.

DAVID DEAN RINGEWOLD,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas S. Muri, Attorney at Law, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Mike McGrath, Lewis and

Clark County Attorney, Helena, Montana

Submitted on Briefs: April 5, 2001
Decided: September 6, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 David Dean Ringewold appeals from the March 31, 2000, order of the District Court for the First Judicial District in Lewis and Clark County which implemented an earlier amended judgment. The amended judgment committed Ringewold to the Department of Corrections for 14 years and added conditions to Ringewold's parole eligibility. We reverse and remand for entry of judgment consistent with this opinion.

¶2 The issues on appeal are:

¶3 1. Did the District Court err when it added new conditions to Ringewold's original sentence?

¶4 2. Did the District Court err when it sentenced Ringewold to a longer term in its written amended judgment than in its oral pronouncement of sentence?

## FACTUAL BACKGROUND

¶5 David Dean Ringewold pled guilty to two charges of felony assault in violation of § 45-5-202, MCA, on April 27, 1995. The District Court committed Ringewold to the Department of Corrections for concurrent 10 year terms and added consecutive two-year terms for the use of a weapon, for a total term of 14 years.

¶6 In an order dated April 28, 1995, the District Court placed Ringewold in the Warm Springs State Hospital. The order allowed Ringewold to petition for a conditional release from Warm Springs. The District Court did not condition Ringewold's release on the completion of anger management courses or moral reconation. Nor did the District Court condition Ringewold's release on the completion of chemical dependency treatment unless such treatment was recommended by his supervising officer.

¶7 On September 18, 1996, Ringewold filed a pro se petition for release from the Montana State Hospital at Warm Springs. The State agreed that a hearing on Ringewold's petition was appropriate but argued that if the District Court found that Ringewold no longer suffered from a mental disease or defect which presented a substantial risk to himself and

others, then the District Court should remand Ringewold to the Department of Corrections.

¶8 The District Court then ordered an independent mental evaluation of Ringewold. However, the independent evaluator declined to examine Ringewold. On February 20, 1997, Ringewold filed another pro se petition for release from Warm Springs. At about this time, however, the staff at the State Hospital determined that Ringewold would no longer benefit from active inpatient treatment and transferred him to the Montana State Prison pursuant to § 46-14-312(2), MCA. Ringewold was subsequently transferred to a correctional facility in Tennessee for reasons not found in the record.

¶9 On February 21, 1997, the District Court appointed counsel to represent Ringewold with respect to his petition for release. On March 6, 1997, the State filed a response to Ringewold's petition. The State argued that Ringewold had not shown that he met the requirements for release set forth in § 46-14-312(3), MCA.

¶10 On April 17, 1997, the District Court ordered court-appointed counsel to file a brief on Ringewold's behalf within 20 days. However, no brief was filed. On June 15, 1998, the District Court appointed new counsel to represent Ringewold.

¶11 On August 14, 1998, Ringewold's new counsel filed a motion to return Ringewold to Warm Springs from the Montana State Prison. In its response, the State conceded that "the circumstances of this case are such that the defendant should be returned to Warm Springs State Hospital and that the defendant be allowed to file a petition pursuant to Section 46-14-312(3), MCA."

¶12 On October 13, 1998, the District Court ordered that Ringewold be returned to Warm Springs.

¶13 On February 2, 1999, the Director of the Department of Health and Human Services filed a petition for sentence review in the First Judicial District Court. The Director sought an order transferring Ringewold back to the Montana State Prison. The Director based her petition on the conclusion that Ringewold continued to suffer from a dangerous mental disorder but would no longer benefit from active inpatient treatment for the disorder.

¶14 The District Court held a conditional release hearing on November 17, 1999. At the hearing, the District Court resentenced Ringewold for a period of 8 years and ordered his transfer from Warm Springs to the Department of Corrections. The transcript of the

hearing reflects the following statement by the District Court regarding Ringewold's new sentence:

> Court: First of all I believe that the original sentence that he was given was more than appropriate for the crimes he committed, and that is ten years and two years for the use of a dangerous weapon. I find that the defendant does not belong in Warm Springs State Hospital because it is not an appropriate place because he can no longer receive benefit from treatment there. I also believe it is absolutely essential for protection of the community and his own rehabilitation for him to be committed to the Department of Corrections for him to be able to complete the appropriate rehabilitation systems so he will no longer be a danger to society or himself when he is eventually released into the community. So - based on all of that I am going to order that he be released from - be transferred from Warm Springs to the Department of Corrections for a period of eight years and you need to figure out exactly how much time that is, because it can't go beyond the total that he is serving, can't go beyond what he was originally sentenced to. So you said that he has been at Warm Springs for approximately four years, but you need to find out exactly because I don't want him to have to serve more than the original sentence.
>
> Counsel: I will.
>
> Court: And the conditions of parole will be that he successfully complete anger management, moral reconation and chemical dependence treatment.

¶15 The District Court then entered a written amended judgment on December 6, 1999. The amended judgment reimposed the previous 10 year sentences for each count of felony assault and the consecutive two-year sentences for use of a weapon. Furthermore, the amended judgment continued the conditions to Ringewold's release, which had been first mentioned in the amended oral sentence. It provided that: "The defendant shall not be eligible for parole until he has successfully entered into and completed a chemical dependency program, an anger management program, and moral reconation therapy." Finally, the amended judgment credited Ringewold for time already served.

¶16 Apparently confused by the disparity between the 14 year sentence in the amended judgment and the 8 year sentence imposed at the conditional release hearing, Ringewold made a motion requesting that the District Court reconsider his sentence. In response, the District Court issued an order on March 31, 2000. The order clarified that the amended

judgment was effective as of April 28, 1995. The order also stated that "Defendant is given credit for all the time already served, and his remaining time is the difference between his time already served and the total of 14 years commitment to the Department of Corrections. In this way, Defendant will not be serving any time longer than a total of 14 years, in accordance with the original judgment and commitment."

¶17 Ringewold now appeals from the March 31, 2000 order of the District Court.

## DISCUSSION

## ISSUE 1

¶18 Did the District Court err when it added new conditions to Ringewold's original sentence?

¶19 Ringewold argues that the District Court erred when it added conditions to his original sentence. He contends that the additional conditions contained in the amended judgment illegally lengthened his sentence. Ringewold cites our holding in *State v. Forsyth* (1988) 233 Mont. 389, 422, 761 P.2d 363, 384, for the idea that due process bars an increased sentence where no intervening conduct or events justify the increase. He further relies on *State v. Nelson*, 1998 MT 227, 291 Mont. 15, 966 P.2d 133, to support his contention that the District Court lacked the authority to impose modified or added conditions to his sentence without first finding that he violated the conditions of his original sentence.

¶20 The State responds that because Ringewold came before the court by petition to review a commitment to the state hospital rather than a petition to revoke a suspended sentence, § 46-14-312(4), MCA and not the cases relied on by Ringewold is controlling. According to the State, Ringewold's sentence review authorized the District Court to enter any sentence not inconsistent with its original sentencing authority so long as the length of confinement or supervision was equal to the original sentence. The State also argues that § 46-14-312(4), MCA does not prohibit the addition of the conditions at issue; that Ringewold's claim that the conditions have lengthened his sentence are not based on facts in the record; and that even if Ringewold could establish that he is not being considered for parole because of the conditions, it is speculative whether he would be granted parole without the conditions.

¶21 It is well established that a district court's authority to impose sentences in criminal

cases is defined and constrained by statute. *State v. Wilson* (1996), 279 Mont. 34, 37, 926 P.2d 712, 714. Moreover, a district court has no power to impose a sentence in the absence of specific statutory authority. *State v. Hatfield* (1993), 256 Mont. 340, 346, 846 P.2d 1025, 1029. Section 46-14-312(4), MCA, provides that the sentencing court may make any order not inconsistent with its original sentencing authority, except that the length of confinement or supervision must be equal to that of the original sentence.

¶22 Ringewold contends that the Department of Corrections' interference with his initial efforts and subsequent denial of the opportunity to comply with the additional conditions imposed by the amended judgment has resulted in his continued incarceration even though he would otherwise be eligible for parole. The State contends that these matters are not part of the record on appeal and are not subject to review by this Court. We disagree in part.

¶23 Most of the facts necessary to determine whether the additional conditions have lengthened Ringewold's sentence are contained in the record. Ringewold was originally sentenced to 14 years. The original sentence did not condition his parole eligibility on the completion of anger management, moral reconation, and chemical dependency treatment programs. We know based on § 46-23-201(2), MCA, that Ringewold would now be eligible for parole were it not for conditions which make him ineligible. The only thing we do not know is whether he is ineligible because he has been unable to meet those conditions. While documents have been attached to Ringewold's brief for the purpose of establishing that fact, those documents are not part of the District Court record and we will not consider them. If, however, the Board of Pardons and Parole has declined to consider Ringewold for parole solely because of his failure or inability to meet the additional conditions, then we conclude that the practical effect of the conditions is to lengthen Ringewold's sentence in violation of § 46-14-312(4), MCA. We do not hold Ringewold to the impossible burden of proving that if he was eligible for parole it would be awarded. Therefore, we remand to the District Court for the purpose of supplementing the factual record and finding whether Ringewold is in fact being denied consideration for parole because of his failure to satisfy the additional treatment conditions. If that be the fact, we order that the conditions be stricken from the District Court's amended judgment.

## ISSUE 2

¶24 Did the District Court err when it sentenced Ringewold to a longer term in its written amended judgment than in its oral pronouncement of sentence?

¶25 When the District Court orally amended Ringewold's sentence on November 17, 1999, it stated that "I am going to order that he be released from - be transferred from Warm Springs to the Department of Corrections for a period of eight years ...." However, the District Court's written amended judgment reimposed his 14 year sentence which in effect required that he serve an additional 10 years. The State contends that the written and oral sentences are not really inconsistent. However, simple mathematics compels that we conclude otherwise. When the written and oral sentences are inconsistent, the oral sentence controls.

¶26 In *State v. Lane,* 1998 MT 76, 288 Mont. 286, 957 P.2d 9, we held that the sentence orally pronounced from the bench in the presence of the defendant is the legally effective sentence and valid, final judgment. For the same reasons, we conclude in this case that the District Court was without authority to lengthen Ringewold's sentence in the written amended judgment from the sentence that it imposed orally and to the extent that they differ, the oral sentence controls. The judgment of the District Court is reversed and this case is remanded to the District Court for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ JIM REGNIER

Justice Jim Rice dissenting:

¶27 I respectfully dissent.

¶28 The Court finds under Issue 2 that the District Court's oral pronouncement of sentence conflicts with the written sentence, and thus requires the oral pronouncement to control, relying on *State v. Lane*, 1998 Mt. 76, 288 Mont. 286, 957 P.2d 9. The Court's holding imposes

an eight-year sentence, and thereby reduces the length of Ringewold's original sentence-a

result clearly not intended by the District Court, which wanted the entirety of the original sentence to be served for the protection of the community. In so holding, the Court violates the very statute it seeks to enforce under Issue 1. Section 46-14-312(4), MCA, requires that the "length of confinement or supervision must be equal to that of the original sentence." This provision prohibits an amended sentence which reduces the length of the original sentence.

¶29 *Lane* requires an oral pronouncement of sentence to control when it is "unambiguous." *Lane*, ¶ 39. Here, the oral pronouncement of sentence was not unambiguous, but, to the contrary, contained a deliberate ambiguity that the judge wanted to resolve prior to the entrance of the written sentence. Although the judge mentioned "8 years" from the bench, she explained in the same breath that she was admittedly unsure of the time which remained on the original sentence, and asked counsel to calculate the precise time remaining so that Ringewold would not serve any longer than the term imposed under the original sentence, which counsel agreed to do.

> Court: . . . So--based on all of that I am going to order that he be released from--be transferred from Warm Springs to the Department of Corrections *for a period of 8 years and you need to figure out exactly how much time that is*, because it can't go beyond the total he is serving, can't go beyond what he was originally sentenced to. *So you said that he has been at Warm Springs for approximately four years, but you need to find out exactly because I don't want him to have to serve more than the original sentence.*
>
> Counsel: I will.

¶30 As the District Court intended, the deliberate ambiguity about the term of the sentence was resolved in the written amended judgment. Therefore, *Lane*'s instruction that "[t]he true function of the written judgment is to help clarify an ambiguous oral sentence" is very necessary here, where the oral pronouncement deliberately contemplated that the written judgment would resolve the ambiguity. *Lane*, ¶ 37. Further, the ambiguity was discussed by the judge in the presence of the Defendant, giving him notice and opportunity to respond, as required in *State v. Waters*, 1999 MT 229, 296 Mont. 101, 987 P.2d 1142.

¶31 The "eight years" referenced by the sentencing judge was nothing more than an estimation of term which she immediately qualified, and it is regrettable that the Court chooses to enforce it. A close review of the portion of the oral pronouncement quoted

above reveals that the sentencing judge also mistakenly *released* the Defendant-and then immediately adjusted her statement by clarifying she was, in fact, *transferring* the Defendant to the Department of Corrections. Sentencing judges must have enough latitude to correct this kind of misstatement.

¶32 The amended judgment reimposed the original sentence, but gave Ringewold credit for the time he had served under the original judgment, thus implementing the District Court's expressed intention that the length of Ringewold's sentence would not be increased. This was further clarified in the District Court's order of March 31, 2000. The District Court thus properly implemented § 46-14-312(4), MCA.

¶33 Under Issue 1, the Court has remanded this matter to determine whether Ringewold is being denied consideration for parole because of his failure or inability to satisfy the additional treatment conditions imposed by the District Court under the amended judgment. If so, the Court requires the conditions to be stricken.

¶34 Section 46-14-312, MCA, is a unique sentencing statute which governs the sentencing of a defendant who suffers from a mental disease or defect affecting his ability to appreciate the criminality of his behavior. The statute provides for subsequent review of the original sentence by the District Court upon certification by a professional person that the defendant's mental condition has improved or that treatment is either unavailable or ineffectual. Section 46-14-312(3), MCA. In reviewing the sentence, "[t]he sentencing court may make any order not inconsistent with its original sentencing authority, except that the length of confinement or supervision must be equal to that of the original sentence." Section 46-14-312(4), MCA. Section 46-14-313, MCA, then provides that "[a]t the expiration of the period of commitment or period of treatment specified by the court under 46-14-312, the defendant must be discharged from custody and further supervision. . ."

¶35 The purpose of these provisions is to give the sentencing court the necessary flexibility to address changes in a mentally impaired defendant's condition or in treatment options. Pursuant thereto, the sentencing court is endowed with the same statutory authority it possessed at the original sentencing, except that the length of confinement or supervision must be equal to that of the original sentence.

¶36 Here, the District Court imposed a term of sentence which was the same as imposed under the original sentence. Notwithstanding, the Court has determined that imposition of

sentence conditions which affect parole eligibility is impermissible, holding at ¶ 17, "[W]e conclude that the practical effect of the conditions is to lengthen Ringewold's sentence in violation of § 46-14-312(4), MCA."

¶37 The Court's focus on the "practical effect" of the sentence on Ringewold's parole eligibility misapplies the statute. The statute addresses term of sentence, and the purpose from its plain meaning is to require the term of sentence to remain constant under the amended sentence, although the conditions addressing a defendant's changing mental condition may be revised in accordance with the court's exercise of its "original sentencing authority," as authorized by the statute. The statute does not require elimination of any "practical effect" the new conditions may have on a defendant's parole eligibility date. By so holding, the Court has improperly interjected parole consideration into this sentencing provision.

¶38 The Court has apparently interpreted the phrase, "the length of confinement or supervision must be equal to that of the original sentence," as requiring day-for-day equivalence in the length of confinement between the original and amended sentences, and presumably, the same day-for-day equivalence in the length of supervision as well. Under the Court's interpretation, any condition imposed by the sentencing court in an amended sentence which affects the time of confinement or the time of supervision is improper.

¶39 However, the statute is properly interpreted to require only that the term of the amended sentence, which the statute describes by reference to its components-confinement or supervision- must be the same length as imposed under the original sentence. Responding to the changing mental condition of a defendant, the sentencing court may impose new conditions, or delete conditions. These decisions may speed or delay the defendant's parole eligibility date, but are permissible as long as the length of the sentence-confinement or supervision-remains the same. For example, in this case, the District Court's amended judgment deleted Ringewold's dangerous offender designation, a change which would normally have the effect of making a defendant eligible for parole earlier. This action would decrease the length of his confinement, and increase the length of his supervision, but the total length of his sentence would remain the same, and thus should be permissible. Under the Court's decision herein, such an action violates the statute.

¶40 For these reasons, I would affirm the District Court.

/S/ JIM RICE

Chief Justice Karla M. Gray joins in the dissent of Justice Rice.

/S/ KARLA M. GRAY