DA 13-0482

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 133

IN THE MATTER OF:

A.S.M.,

     A Youth.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DJ 07-005(A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Andrée Larose; Morrison, Sherwood, Wilson & Deola, PLLP;
Helena, Montana

     For Appellee:

          Timothy C. Fox, Montana Attorney General; Brenda K. Elias,
Assistant Attorney General; Helena, Montana

          Ed Corrigan, Flathead County Attorney; Tara R. Fugina, Deputy
County Attorney; Kalispell, Montana

Submitted on Briefs:  April 23, 2014
Decided:  May 27, 2014

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 The Eleventh Judicial District Court, Flathead County, partially denied A.S.M.'s motion to modify a transfer order under § 41-5-208, MCA (§ 208 order). A.S.M. appeals. We affirm.

¶2 A restatement of the dispositive issue on appeal is:

¶3 *Did the District Court err when it did not modify the § 208 order to suspend A.S.M.'s sentence and terminate supervision by the Department of Corrections?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 A.S.M. is presently a 21 year-old male who has been diagnosed with significant developmental disabilities and mental illnesses, including Autism Spectrum Disorder (Asperger's syndrome). On February 16, 2007, A.S.M. admitted that he had committed the offense of sexual intercourse without consent, a felony, while he was a minor. The Youth Court declared A.S.M. a delinquent youth and a serious juvenile offender. A.S.M. was placed on formal probation until the age of 18 and until all conditions were met. The Youth Court ordered A.S.M. to successfully complete sex offender treatment, and between June 2007 and May 2010, he attended treatment programs in Texas and Colorado. However, he failed to successfully complete treatment.

¶5 On May 6, 2011, the Youth Court issued a § 208 order transferring jurisdiction over A.S.M. from the Youth Court to the District Court and transferring supervisory responsibility of A.S.M. to the Department of Corrections (DOC). Pursuant to the order, A.S.M. was transferred from Pine Hills Youth Correctional Facility to Montana State

2

Prison (MSP) on his eighteenth birthday. A.S.M. was not eligible for parole until he completed phases one and two of MSP's sexual offender program. The District Court retained jurisdiction over the matter until A.S.M. reached the age of 25.

¶6 On December 7, 2012, A.S.M. filed a motion to modify the § 208 order. A.S.M. requested that the court (1) give the DOC authority to place him in an appropriate residential treatment and educational program and (2) recommend that the DOC send him to Whitney Academy in Massachusetts (the Academy). The Academy is a private residential school and treatment facility that specializes in providing special education instruction and related services to adolescent and young adult males with developmental disabilities and trauma histories who have exhibited sexually abusive behavior. The State opposed A.S.M.'s motion, arguing that the court did not have the authority to grant the requested relief under § 41-5-208(5), MCA, which states in relevant part that "the district court may order that the youth . . . (a) be incarcerated in a state adult correctional facility, boot camp, or prerelease center; or (b) be supervised by the department."

¶7 The court held a hearing on the motion on January 18, 2013. At the hearing, expert witnesses testified that placement at the Academy was appropriate for A.S.M. The Director of Admissions at the Academy testified that A.S.M. had been screened for admission and accepted by the Academy. A DOC probation and parole officer testified that commitment to the DOC with placement at the Academy would be difficult, and that the transfer process to Massachusetts could take months. He further testified that if the

3

court granted A.S.M.'s motion, A.S.M. would be immediately released from MSP even though it was unclear whether appropriate supervision would be available.

¶8 After receiving a request on behalf of A.S.M. for a due process hearing against the DOC, the Office of Public Instruction appointed Hearing Officer Leslie Halligan (Halligan) to determine whether A.S.M. was being denied a free appropriate public education while incarcerated. On May 15, 2013, Halligan issued an order concluding that A.S.M. had been denied a free and appropriate education by the DOC in violation of the Individuals with Disabilities Education Improvement Act of 2004, and that he was entitled to an award of compensatory services.

¶9 On June 10, 2013, the District Court issued its findings of fact, conclusions of law, and order on A.S.M.'s motion. The court found that A.S.M. was an untreated sex offender. The District Court took judicial notice of Halligan's order but determined that remedial education issues were not within its jurisdiction, and that Halligan's recommendations were purely advisory. The court concluded modification of the § 208 order was appropriate given A.S.M.'s difficulties in completing sex offender treatment; the court accordingly removed the parole restriction requiring A.S.M. to complete phases one and two of the sexual offender program. According to the District Court, this would "allow the [DOC] and Parole Board to fashion an appropriate program that protects the community, provides [A.S.M.] with the treatment he needs, and complies with the remedial education requirements imposed by Hearings Officer Halligan." The court noted that "the DOC is now required to provide [A.S.M.] compensatory educational

services, whether that be placement at Whitney Academy or services within the State of Montana or elsewhere," and that "[r]elease on parole does not necessarily preclude attendance at Whitney Academy, but rather ensures that, through the DOC and the Parole Board, an appropriate plan is in place at all times."

¶10 A.S.M. timely appealed the court's order. A.S.M. seeks a remand of the case with instructions that the District Court modify its order to facilitate A.S.M.'s placement at the Academy by: (1) suspending his sentence on the condition that he participate in treatment at the Academy and in any recommended aftercare; and (2) terminating supervision by the DOC. A.S.M. concedes that release to the community is not appropriate for him. A.S.M. argues the District Court abused its discretion by keeping him in the adult corrections system, which may limit his chances of being accepted for supervision by Massachusetts. A.S.M. further argues the District Court's decision was contrary to the express purposes of the Youth Court Act, was not based on the evidence in the record, and was based on a mistake of law, namely the court's conclusion that imposition of the disposition sought by A.S.M. would require A.S.M.'s immediate release without conditions for appropriate supervision and treatment.

¶11 The State counters that the District Court had no statutory authority to release A.S.M., an untreated sex offender, from MSP without an appropriate discharge plan to ensure community safety. According to the State, the court's June 10, 2013 order "represents an act of grace to which A.S.M. may not have been entitled in the first place" and actually facilitates A.S.M.'s placement at the Academy. The State maintains that the

5

court reasonably found that MSP was the only appropriate placement for A.S.M. to comply with his youth disposition and complete sex offender treatment. The State contends that A.S.M. should retain his adult inmate status, and that the court's decision not to impose a supervisory disposition requiring A.S.M.'s immediate release from MSP to the DOC adult probation services was not in error.

**STANDARD OF REVIEW**

¶12 This Court reviews conclusions of law to determine if they are correct. *In re M.W.*, 2012 MT 44, ¶ 9, 364 Mont. 211, 272 P.3d 112 (citation omitted).

**DISCUSSION**

¶13 *Did the District Court err when it did not modify the § 208 order to suspend A.S.M.'s sentence and terminate supervision by the Department of Corrections?*

¶14 As an initial matter, we emphasize that the District Court did in fact modify the order by eliminating the parole eligibility requirement. However, A.S.M. argues the District Court should have gone even further and modified the order to remove A.S.M. from the adult corrections system. We note that A.S.M. has never been convicted as an adult and is only in the adult corrections system because of the § 208 order.

¶15 A district court's authority, including authority to modify an order, is dictated by the state and federal constitutions and by statute. In the absence of a specific grant of authority, a lower court does not have the jurisdiction to act. *See e.g. State v. Ringewold*, 2001 MT 185, ¶ 21, 306 Mont. 229, 32 P.3d 729 (citations omitted) ("[A] district court's authority to impose sentences in criminal cases is defined and constrained by statute,"

6

and "a district court has no power to impose a sentence in the absence of specific statutory authority."); *State v. Nelson*, 1998 MT 227, ¶ 24, 291 Mont. 15, 966 P.2d 133. A transfer of jurisdiction and supervisory authority under § 41-5-208, MCA, terminates a youth court's jurisdiction. *State v. Andersen-Conway*, 2007 MT 281, ¶ 15, 339 Mont. 439, 171 P.3d 678 (citing § 41-5-205(2)(a), MCA). However, § 41-5-1422(1), MCA, provides: "An order of the [youth] court may be modified at any time." When the youth is committed to the DOC, "an order pertaining to the youth may be modified only upon notice to the department and a subsequent hearing." Section 41-5-1422(2), MCA.

¶16    Though § 41-5-1422, MCA, is within the Youth Court Act, the plain language of the statute does not preclude a district court from modifying a youth court order following the appropriate hearing. It is consistent with the scheme of the Youth Court Act that a dispositional order may be modified, including by a district court, even though the youth is no longer a minor. *See e.g.* § 41-5-208(4), MCA (allowing a district court to impose conditions if a youth violates a disposition previously imposed by a youth court); § 41-5-102(2)(b), MCA (The Youth Court Act must be interpreted and construed to "[provide] a program of supervision, care, rehabilitation, detention, competency development, and community protection for youth before they become adult offenders."). Because the May 6, 2011 order was "[a]n order of the [youth] court," the District Court had authority to modify the order pursuant to § 41-5-1422(1), MCA.

¶17    The District Court did not err by refusing to further modify the § 208 order, however. There is no evidence in the record that A.S.M. has been approved for transfer

to Massachusetts through the interstate compact process, which is a prerequisite to his placement at the Academy. The District Court heard testimony that if the court modified the order as requested, A.S.M. would be immediately released from MSP, possibly before appropriate arrangements could be made by the DOC. The court heard further testimony that if Massachusetts denied supervision, A.S.M. would be in the community, perhaps without appropriate treatment options.

¶18    When a case involves a youth offender who was sentenced pursuant to the Youth Court Act, a court may consider the "express legislative purposes" of the Act, even after a § 208 transfer. *See e.g. In re D.A.S.*, 2008 MT 168, ¶ 11, 343 Mont. 360, 184 P.3d 349 (citing § 41-5-102(2)(b), MCA). The court's order is consistent with the Youth Court Act policy of ensuring there is oversight over a youth completing treatment. *See* § 41-5-102(2)(a)-(b), MCA. The District Court clearly fashioned a remedy in light of the facts and circumstances before it, balancing the youth's need of treatment and the safety and protection of the community. Our review of the record clearly indicates that A.S.M. is not ready for release into the community and requires further treatment. Importantly, the court's order does not preclude attendance at the Academy or at an alternative program such as Opportunities Resources, Inc. in Missoula. Halligan noted that "[t]he roadblock to implementation of this appropriate and necessary remedy [of placement at the Academy] is the District Court Order that places A.[S.]M. at MSP and requires that he complete Phases one and two of the sex offender program at MSP before he is eligible for parole." This roadblock no longer exists. We conclude the District Court did not err

by partially modifying the order to remove the parole eligibility requirement but refusing to further modify the order.

## CONCLUSION

¶19    For the foregoing reasons, we affirm the District Court's order partially modifying the § 208 transfer order.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ LAURIE McKINNON